## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

### NO. 2013-KM-02085-COA

PAXTON AUSTIN A/K/A PAXTON RIOT                     APPELLANT
AUSTIN A/K/A PAXTON R. AUSTIN

v.

STATE OF MISSISSIPPI                                         APPELLEE


DATE OF JUDGMENT:             10/10/2013
TRIAL JUDGE:                  HON. LEE J. HOWARD
COURT FROM WHICH APPEALED:    CLAY COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:       RODNEY A. RAY
ATTORNEY FOR APPELLEE:        MICHELLE D. EASTERLING
COUNTY PROSECUTOR:            MICHELLE D. EASTERLING
NATURE OF THE CASE:           CRIMINAL - MISDEMEANOR
TRIAL COURT DISPOSITION:      CONVICTED OF BOATING UNDER THE
                              INFLUENCE AND SENTENCED TO
                              TWENTY-FOUR HOURS IN THE CLAY
                              COUNTY JAIL, SUSPENDED ON
                              PAYMENT OF A $1,000 FINE, WITH TWO
                              YEARS OF PROBATION
DISPOSITION:                  AFFIRMED - 10/06/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., ISHEE AND CARLTON, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1.    In August 2012, Paxton Austin was involved in a boating accident on the Tennessee-Tombigbee River in Clay County, Mississippi.  He was eventually convicted in the Clay County Circuit Court of boating under the influence in connection with the accident.  He was sentenced to twenty-four hours in the local jail and ordered to complete a boating-safety course conducted by the Mississippi Department of Wildlife and Fisheries.  His jail time was

suspended upon payment of a $1,000 fine and all court costs. Aggrieved by his conviction, Austin appeals asserting that the conviction was against the overwhelming weight of the evidence. Finding no error, we affirm.

**STATEMENT OF FACTS**

¶2. On August 26, 2012, Austin and Suzanne Brown were boating on the river with friends. Eventually, Austin and his friends docked on a sandbar that was also occupied by Luke Robinson, an acquaintance of Austin, and Greg Bell, an off-duty Mississippi Highway Patrol (MHP) trooper. Austin, Robinson, and Bell each had his respective boat present.

¶3. Robinson greeted Austin, and offered Austin and his companions Jell-O shots consisting of gelatin mixed with vodka and chilled in small cups. Robinson showed Austin where the shots were located in his cooler and told him to help himself. Robinson did not know how much liquor was in each shot or exactly how many shots Austin took. He witnessed Austin take "less than five or so" during the several hours they spent on the sandbar but could not personally attest as to whether or not Austin took more than that.

¶4. Bell, whose history in law enforcement includes the MHP, the Starkville Police Department, and the Mississippi Department of Wildlife and Fisheries, is trained regarding persons under the influence of alcohol. Most notably, Bell serves as an instructor for the Mississippi Highway Patrol Academy teaching a class on "driving under the influence" (DUI), he is certified in advanced-roadside-impaired-driving law enforcement, and he is certified as a drug-recognition expert.

¶5. On the day in question, Bell was also boating and enjoying the sandbar with friends.

Bell's companions included Jimmy Thomas, a fellow MHP trooper; Ross Pickle, a network engineer; and other friends and family, including a nurse and a first-responder paramedic. For approximately three hours on the sandbar, Pickle observed Austin. He testified that he witnessed Austin drinking beer with his friends before the group later left the sandbar.

¶6. Austin, with Brown in his boat, and Robinson, with numerous passengers in his boat, decided to cruise to a nearby restaurant and make one stop along the way. Afterwards, the two groups headed out to the main channel of the river. At that point, Bell happened to be at the same point in the main channel of the river, and the three boats were eventually running side by side.

¶7. Bell testified that he saw a barge traveling toward them approximately a quarter of a mile away and measuring about 100 feet wide and eight feet high above the water. He also heard the barge's horn honking to alert other watercraft of its presence. Bell veered off to the right to yield to the barge, as did Robinson. Nonetheless, Bell looked back toward Austin's boat and quickly realized that he was too close to the barge and would not clear it. The barge captain also recognized that Austin's boat was nearing impact, and threw the barge's engines into full reverse to slow its forward motion.

¶8. Austin's boat collided with the front left side of the barge and became wedged upside down underneath the barge, with only a portion of the front of the boat visible. Austin was thrown into the water, and Brown was trapped underneath the boat and barge. Neither was wearing a life jacket. Thomas saw Brown's hand emerge from underneath the wreckage, and dived into the water to pull her to safety. In addition to her body being in shock and bleeding

profusely, she had suffered severe lacerations to her back.

¶9.   Meanwhile, Pickle had observed Austin clinging to the front of the barge, and dived into the water to help him. As Austin's boat was bobbing up and down in the water from the suction force of the barge, Austin attempted to climb up the bow of the boat. The suction force of the barge became too strong, and the boat was pulled completely underneath the barge and then thrown back out to the river. Despite the poor condition of both Austin and his boat, Austin continued to try to reach his mangled boat. Pickle's attempts to bring Austin back to Bell's boat were met with resistance as Austin repeatedly attempted to break free. Eventually Pickle was able to drag Austin into Bell's boat, where Bell and Pickle were forced to restrain him to prevent him from jumping back into the water toward his boat. Austin suffered two broken ribs and a collapsed lung as a result of the collision.

¶10.   Bell had called 911 as soon as the collision had occurred. As a result, local emergency services and the Clay County Sheriff's Department were on the scene by the time Bell's boat reached the nearest port. Deputy John Lepicier was present when Bell and his passengers arrived at the port. Deputy Lepicier observed "a smell of [an] intoxicating beverage emitting from [Austin]" as well as slurred speech during their conversation. Subsequently, Deputy Lepicier requested that Austin submit to a breath-alcohol test. Austin complied, and tested positive for an illegal blood-alcohol level. Specifically, Austin tested 0.110, with the legal limit being 0.08.

¶11.   Officer William Knowles, a DUI-enforcement officer, was also present on the scene. He also testified to smelling a "pretty strong" intoxicating beverage on Austin's breath. Both

4

officers opined that Austin was intoxicated.

¶12.    Austin was eventually tried and convicted in the circuit court of boating under the influence.  He was sentenced to twenty-four hours in the Clay County jail, with his sentence suspended pending payment of a $1,000 fine and court costs, and two years of probation.  He was also ordered to complete a boating-safety course.  He now appeals his conviction on the ground that it was against the overwhelming weight of the evidence.

**DISCUSSION**

¶13.    The standard of review for analyzing a claim that a verdict is against the overwhelming weight of the evidence requires us to "accept as true the evidence which supports the verdict.  Reversal is warranted only when we are convinced that the circuit court has abused its discretion and that allowing the verdict to stand would sanction an unconscionable injustice." *Jones v. State*, 958 So. 2d 840, 843 (¶6) (Miss. Ct. App. 2007) (citation omitted).

¶14.    Boating under the influence is outlined by Mississippi Code Annotated section 59-23-7(1) (Rev. 2013) as follows:

> It is unlawful for any person to operate a watercraft on the public waters of this state who . . . [i]s under the influence of intoxicating liquor; . . . [i]s under the influence of any other substance which was impaired such person's ability to operate a waercraft; or . . . [h]as eight one-hundreths percent (.08%) or more by weight volume of alcohol in the person's blood based upon milligrams of alcohol per one hundred (100) cubic centimeters of blood as shown by a chemical analysis of such person's breath, blood[,] or urine . . . .

¶15.    As noted previously, Austin's breath-alcohol test showed that his blood-alcohol level was 0.110 – above the 0.08 limit.  Furthermore, witness testimony reflects that Austin was

5

drinking beer and taking Jell-O shots prior to the accident. Law-enforcement officers at the scene following the accident observed Austin slurring his speech and noted a strong smell of an intoxicating beverage on Austin's breath.

¶16. Our standard of review requires that we accept this evidence as true. As such, we may only reverse if we find the circuit court abused its discretion in permitting the verdict to stand or that allowing the verdict to stand would be unconscionable. We fail to find either situation present here. The evidence is more than adequate to support the verdict at hand. This issue is without merit.

¶17. **THE JUDGMENT OF THE CLAY COUNTY CIRCUIT COURT OF CONVICTION OF BOATING UNDER THE INFLUENCE AND SENTENCE OF TWENTY-FOUR HOURS IN THE CLAY COUNTY JAIL, SUSPENDED ON PAYMENT OF A $1,000 FINE, AND TWO YEARS OF PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, MAXWELL, FAIR, JAMES AND WILSON, JJ., CONCUR.**